Donald J. Winder (UT #3519)
Laura H. Tanner (UT #13882)
**WINDER & COUNSEL, P.C.**
460 South 400 East
Salt Lake City, UT  84111
Telephone: (801) 322-2222
Facsimile:  (801) 322-2282

Attorneys for Plaintiffs

### IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **LAYNE MORRIS, an individual; LEISL MORRIS in her own right, TABITHA SPEER, in her own right; TABITHA SPEER, as Executrix of the ESTATE OF CHRISTOPHER SPEER; and TABITHA SPEER on behalf of her minor children T.S. and T.S.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**OMAR KHADR, an individual,**<br><br>**Defendant.** | **COMPLAINT**<br><br><br>**Civil No.:** 2:14-cv-00391-DBP<br><br>**Magistrate Judge:** Dustin B. Pead |

COME NOW the plaintiffs Layne Morris, Leisl Morris, Tabitha Speer, Tabitha Speer, as Executrix of the Estate of Christopher Speer, and Tabitha Speer on behalf of her minor children T.S. and T.S. and complain against defendant Omar Khadr ("Khadr") as follows:

### PARTIES, JURISDICTION AND VENUE

1. Layne Morris is a resident of Salt Lake County, Utah, who was injured as a result of a terrorist ambush in Afghanistan.

2. Leisl Morris is a resident of Salt Lake County, Utah, and is married to Layne Morris.

3. Tabitha Speer is a resident of Pinehurst, North Carolina, and is the surviving spouse of Christopher Speer, a decedent who was killed as a result of a terrorist ambush in Afghanistan.

4. Tabitha Speer has been appointed the Executrix of the Estate of Christopher Speer.

5. Tabitha Speer brings this action on her own behalf and on behalf of her minor children, T.S. and T.S. Tabitha Speer and her children are the survivors and heirs of Christopher Speer who is deceased.

6. Khadr was born in 1986, in Toronto, Canada, and is a Canadian citizen.

7. The United States government detained Khadr in Guantanamo Bay Cuba, until he was released to the Canadian government.

8. At all times relevant to this Complaint, Khadr met the Military Commissions Act of 2009 definition of an alien unprivileged enemy belligerent.

9. This Court has jurisdiction pursuant to 18 U.S.C. §§ 2333(a) and 2334(a).

10. Venue is proper pursuant to 18 U.S.C. § 2334(a).

## GENERAL FACTUAL ALLEGATIONS

11. On October 13, 2010, Khadr executed a Stipulation of Fact in *United States v. Omar Ahmed Khadr,* ISN: 0766 (Office of Military Comm'n 2010)("Stipulation"). A copy of the Stipulation is attached hereto as Exhibit 1.

12. The Stipulation was attached to an offer for Pre-Trial Agreement, a copy of which is attached hereto as Exhibit 2.

13. In his Stipulation, Khadr admitted al Qaeda "was founded by Usama bin Laden and others in or about 1989 for the purpose of opposing certain governments and their officials by the use of force and violence." Exhibit 1, ¶ 3.

14. Khadr also stipulated one purpose or goal of al Qaeda is "to support violent attacks against property and nationals (both military and civilian) of the United States." *Id.*

15. Khadr further admitted "[i]n approximately June 2002, at 15-years old, [he] was sent by his father to serve as a translator for known members of the Libyan Islamic Fighting Group (LIFG) and al Qaeda." *Id.* at ¶21.

16. Khadr admitted he attended "one-on-one private terrorist training from a man who was member of al Qaeda." *Id.*

17. This training, which Khadr called "main-basic" training, consisted of training "in the use of rocket propelled grenades, various assault rifles, pistols, grenades, and explosives." *Id.*

18. "Prior to attending training, Khadr [admitted he] had intimate knowledge of the al Qaeda organization and its goals." *Id.* at ¶ 23.

19. Khadr stipulated he had "voluntarily and of his own free will, chose[n] to conspire and agree with various members of al Qaeda to train and ultimately conduct operations to kill United States and coalition forces." Exhibit 1, ¶ 23.

20. Khadr stipulated that "after completion of the "main-basic" training, in July 2002, [Khadr] joined a cell that was made up of terrorists that had associations with both LIFG and al Qaeda." *Id.* at ¶ 24.

21. Khadr stipulated he and other operatives in his cell "targeted U.S. forces with the specific intent of killing Americans, and as many as possible." *Id.* at ¶ 27.

22. On July 27, 2002, Khadr admitted he was "at a compound in Ayub Kheil with the al Qaeda explosives cell." *Id.* at ¶ 35.

23. Khadr admitted he knew "U.S. forces received information that suspected members of al Qaeda were operating out of the compound and conducting attacks against U.S. and coalition forces." *Id.*

24. Khadr also admitted, "when Khadr and the other al Qaeda cell members refused to come outside of the compound to speak to the U.S. forces, two members of the accompanying Afghan Military Forces entered the main compound, raised their heads above a wall and [ ] asked for the occupants of the compound to come out and speak to the U.S. led forces." *Id.* at ¶ 36.

25. Khadr stipulated at the moment the Afghan Military Forces requested the cell members speak to the U.S. forces "individuals in the [compound] opened fire instantly killing both Afghan soldiers." Exhibit 1, ¶ 36.

26. Khadr admitted following the killing of the Afghan soldiers, "a four-hour firefight between U.S. soldiers and an al Qaeda cell commenced." *Id.*

27.     Khadr stipulated he had "the opportunity to leave with the women and children. At that time, he could have left the compound and was not forced by anyone to stay and fight. This was a decision Khadr made knowingly and voluntarily." *Id.* at ¶ 38.

28.     Khadr admitted he "was given an AK-47 Kalashnikov, a pistol, and took up a fighting position within the compound." *Id.*

29.     Khadr admitted "[a]fter the U.S. forces believed the firefight was over, they began clearing the compound. A U.S. Special Forces unit entered the compound." *Id.* at ¶ 41.

30.     Layne Morris and Christopher Speer were soldiers in the Armed Forces of the United States of America serving in Afghanistan as part of the Special Forces unit involved in the firefight.

31.     Khadr stipulated the U.S. Special Forces unit believed that all individuals in the compound had been killed, but when the Special Forces unit entered the compound, "the unit began taking direct fire from an AK-47." Exhibit 1, ¶ 41.

32.     Upon hearing the U.S. Special Forces, Khadr admitted he "positioned [himself] behind a crumbling wall and threw a Russian F-1 grenade in the vicinity of the talking soldiers…with the specific intent of killing or injuring as many Americans as he could." *Id.* at ¶ 42.

33.     Khadr stipulated at the time he threw the grenade, he "was not under the impression that U.S. soldiers were preparing to charge his position, attack, or engage him." *Id.* at ¶ 43.

34.     Khadr admitted he "thought the soldiers entering the compound were looking for wounded or dead and that the firefight was over." *Id.*

35. Khadr admitted the grenade he threw "exploded near Sergeant First Class (SFC) Christopher Speer, launching shrapnel into his head and causing mortal brain damage." *Id.* at ¶ 44.

36. Khadr stipulated he knew "SFC Speer died 12 days later on 8 August 2002," from the injuries he sustained from the grenade Khadr threw. *Id.* at ¶ 42.

37. In his Stipulation, Khadr admitted he murdered SFC Christopher Speer and Khadr also admitted "other U.S. soldiers, including SFC Layne Morris (who lost his sight in one eye from grenade shrapnel), were injured" by his actions. Exhibit 1, ¶ 49.

38. The United States captured Khadr during the aforementioned attack and held him as a prisoner at Guantanamo Bay, Cuba.

39. Khadr admitted he stated in "interviews with U.S. personnel that he believed he would likely die in the firefight and wanted to kill as many Americans as possible before being killed." Exhibit 1, ¶ 44.

40. Khadr stipulated "[d]uring an interview in October 2002, Khadr stated he felt happy when he heard that he killed an American. Khadr indicated that when he would get "pissed off" with the guards at Bagram, he would recall killing SFC Christopher Speer and it would make him feel good." *Id.*

41. Khadr admitted all the facts in his Stipulation were true when he entered his guilty plea before the Office of Military Commissions on October 25, 2010. A copy of the Record of Trial documenting Khadr's guilty plea is attached as Exhibit 3.

42. Khadr pled guilty to all Charges and Specifications. *Id.* at 4201:13.

43. The Charges and Specifications Khadr pled guilty to included murder in violation of the law of war for killing SFC Christopher Speer. *Id.* at 4209:9-21.

44. Khadr also pled guilty to providing "material support or resources in support of al Qaeda" which included Khadr's admission he "threw and/or fired grenades at nearby coalition forces resulting in numerous injuries." *Id.* at 4221:8-10, 4222:5-6.

45. As a result of Khadr's attack, Layne Morris suffered severe injuries, including, but not limited to, the loss of one eye, pain, suffering and permanent scaring and disfigurement.

46. As a result of the attack and consequent death of Christopher Speer, Tabitha Speer has suffered the loss of financial support, loss of society, comfort, care, protection, marital relations, affection and companionship of her husband, Christopher Speer.

47. As a result of the attack and consequent death of Christopher Speer, his minor children, T.S. and T.S., have suffered the loss of financial support, loss of society, comfort, care, protection, affection, companionship and relationship with their father, Christopher Speer.

48. As a result of intervention by the Canadian government, Khadr was eventually released to the custody of the Canadian government.

## COUNT ONE

**PERSONAL INJURY TO LAYNE MORRIS AND INJURY TO LEISL MORRIS**

49. The foregoing paragraphs are fully incorporated herein by this reference.

50. Layne Morris brings this action for personal injuries caused by the defendant engaging in, sponsoring, financing, aiding and abetting and otherwise conspiring to commit acts of terror, including the acts complained of herein.

51. Layne Morris was injured as a result of Khadr's violent, dangerous and criminal acts of international terrorism as well as Khadr's conspiracy, assistance, aiding and abetting al Qaeda and its members, in its acts of international terrorism.

52. Layne Morris is entitled to recover a judgment against defendant for the intentional infliction of injury, pain and suffering and other general and special damages inflicted upon him in the amount of Two Million, Seven Hundred Thousand Dollars ($2,700,000), which includes lost wages in the amount of $200,000.

53. As a result of the injuries to Layne Morris, Leisl Morris suffered loss of consortium, marital services, affection and companionship and is entitled to recover damages in the amount of Two Million, Five Hundred Thousand Dollars ($2,500,000).

## COUNT TWO

### WRONGFUL DEATH OF CHRISTOPHER SPEER

54. The foregoing paragraphs are fully incorporated herein by this reference.

55. Tabitha Speer, for herself, the Estate of Christopher Speer and her minor children bring this action for wrongful death proximately caused by the defendant engaging in, aiding and abetting and otherwise conspiring to commit acts of terrorism, including the acts complained of herein.

56. Christopher Speer was injured and ultimately died from his wounds as a result of Khadr's violent, dangerous and criminal acts of international terrorism as well as Khadr's conspiracy, assistance, aiding and abetting al Qaeda and its members, in its acts of international terrorism.

57. As a result of Christopher Speer's death, he was deprived of his relationship with his family, deprived of his career and earnings and deprived of the pleasures of life.

58. As a result of the wrongful death of Christopher Speer, his heirs and family have been deprived of future aid, income, assistance, services, comfort, support, parental care, companionship, loss of accretion to their estates, affection, financial support, consortium, loss of family, earnings and other items of damages.

59. As a result of defendant's acts of terrorism resulting in Christopher Speer's wrongful death, the heirs and families of the decedent suffer and will continue to suffer permanent emotional distress, severe trauma and psychological injuries.

60. Tabitha Speer, the Estate of Christopher Speer, T.S. and T.S. are entitled to damages in the amount of Twenty-Nine Million, Five Hundred Thousand Dollars ($29,500,000).

## COUNT THREE

### SURVIVAL BY CHRISTOPHER SPEER

61. The foregoing paragraphs are fully incorporated herein by this reference.

62. As a result of the violent, dangerous and criminal acts of international terrorism by Khadr, Christopher Speer was placed in severe and prolonged extreme apprehension, suffered extreme fear, terror, anxiety, emotional, physical and psychological distress and trauma as a result of his injuries before his death.

63. Christopher Speer was mentally, physically and emotionally damaged prior to his death.

64. Christopher Speer is entitled to damages in the amount of Ten Million Dollars for his pain and suffering prior to his death ($10,000,000).

## COUNT FOUR

**NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

65. The foregoing paragraphs are fully incorporated herein by this reference.

66. Khadr committed violent, dangerous and criminal acts of international terrorism.

67. Khadr knew that his actions of July 27, 2002 would injure or kill United States citizens, leaving their family members to grieve for their losses.

68. Khadr's July 27, 2002 attack on Layne Morris and Christopher Speer was committed with a willful disregard for the rights and lives of the Plaintiffs.

69. As a direct and proximate cause of Khadr's conduct, Plaintiffs have suffered, and will forever in the future suffer, severe and permanent psychiatric disorders, emotional distress and anxiety, permanent psychological distress, and permanent mental impairment causing expenses for medical care and counseling.

70. Khadr intended to kill American citizens. His efforts culminated in the death of Christopher Speer and the severe injuries to Layne Morris and caused the contemporaneous and permanent emotional suffering for the Plaintiffs.

71. Khadr, by engaging in this unlawful conduct, negligently and/or intentionally inflicted emotional distress upon the Plaintiffs.

72. Plaintiffs are entitled to damages in the amount of Forty-Four Million, Seven Hundred Thousand Dollars ($44,700,000).

## COUNT FIVE

**18 U.S.C. §2333 – TREBLE DAMAGES FOR U.S. NATIONALS**

73. The foregoing paragraphs are fully incorporated herein by this reference.

74. Christopher Speer and Layne Morris were at all times relevant hereto, United States citizens.

75. As set forth above, defendant permanently injured Layne Morris and injured and killed Christopher Speer through and by reason of violent, dangerous and criminal acts of international terrorism.

76. As set forth above, defendant also provided material support and resources to al Qaeda.

77. As a result of defendant's acts in furtherance of international terrorism, Christopher Speer and Layne Morris suffered the damages as set forth herein.

78. Pursuant to 18 U.S.C. §§2333 *et. seq.,* any national injured in his or her person, his or her estate, survivors, or heirs are entitled to recover threefold the damages they have sustained and the cost of suit, including attorney fees.

## COUNT SIX

## PUNITIVE DAMAGES

79. The foregoing paragraphs are fully incorporated herein by this reference.

80. The actions of Khadr, acting in concert or otherwise conspiring to carry out, aid and abet these unlawful objectives of terrorism, were violent, dangerous and criminal acts of international terrorism performed in complete disregard of the rights and safety of Layne Morris and Christopher Speer.

81. Khadr intended to carry out actions that would maim, deform and end the lives of U.S. Nationals.

82. As a result of Khadr's violent, dangerous and criminal acts of international terrorism, plaintiffs are entitled to punitive damages in the amount of three times the actual damages awarded.

### JURY DEMAND

Plaintiffs demand trial by a jury on all issues so triable.

**WHEREFORE,** plaintiffs pray for relief against defendant as follows:

1. Plaintiffs are entitled to a judgment against defendant for damages and other relief in the amount of Forty-Four Million, Seven Hundred Thousand Dollars ($44,700,000).

2. Plaintiffs are entitled to a judgment against defendant for treble these damages as set forth in 18 U.S.C. § 2333(a) or as punitive damages.

3. Pursuant to 18 U.S.C. § 2333(a), plaintiffs are entitled to recover their costs of suit, including actual attorney fees.

4. For such other and further relief this Court deems just and proper.

DATED this 22 day of May, 2014.

WINDER & COUNSEL, P.C.

/s/ Donald J. Winder
Donald J. Winder
Laura H. Tanner
460 South 400 East
Salt Lake City, UT 84111
Telephone: (801) 322-2222