# EXHIBIT 3

UNCLASSIFIED//FOR PUBLIC RELEASE

ORIGINAL

VOLUME ___ of ___

# RECORD OF TRIAL

(and accompanying papers)

of

**OMAR AHMED KHADR**
**also known as AKHBAR**
**FARHAD; AKHBAR**
**FARNAD; AHMED**
**MUHAMMED KHALI**

*Name and any aliases charged*

ISN: 0766

*Identification Number*

By

## MILITARY COMMISSION

Convened by the Convening Authority under 10 USC §948h

Office of Military Commissions

*(Name of Convening Authority)*

Tried at

4 June 2007, 8 November 2007,
4 February 2008, 13 March 2008,
11 April 2008, 8 May 2008, 19 June 2008,
13-14 August 2008, 10-11 September 2008,
22 October 2008, 12 December 2008,
19-20 January 2009, 1 June 2009,
15 July 2009, 7 October 2009,
28-30 April 2010, 1 May 2010,
3-6 May 2010, 12 July 2010,
9-12 August 2010, 25-31 October 2010

Guantánamo Bay, Cuba          on

*(place or Places of Trial)*                    *(Date or Dates of Trial)*

MC FORM 490, JAN 2007

Front Cover

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    [The R.M.C. 803 session was called to order at 0859, 25 October

2    2010.]

3         MJ [COL PARRISH]:  This commission is called to order.

4              All parties are once again present as before.  Mr. William

5    has joined us, and we have a new defense counsel, Major Schwartz.

6              Major Schwartz, please announce by whom you were detailed

7    and your qualifications.

8         ADC [MAJ SCHWARTZ]:  I have been detailed to this military

9    commission by the chief defense counsel.  I am qualified under Rule

10   for Military Commission 503, and I have previously been sworn in

11   accordance with Rule for Military Commission 807.  I have not acted

12   in any manner that might tend to disqualify me in this proceeding.

13        MJ [COL PARRISH]:  Thanks.

14        DC [MAJ SCHWARTZ]:  My detailing letter is marked as Appellate

15   Exhibit 336, Your Honor.

16        MJ [COL PARRISH]:  Thanks very much, Major Schwartz.

17             Good morning, Mr. Khadr.

18        ACC [MR. KHADR]:  Good morning.

19        MJ [COL PARRISH]:  And you want to proceed both with Major

20   Jackson——excuse me——Major Schwartz and Lieutenant Colonel Jackson;

21   would that be fair to say?

22        ACC [MR. KHADR]:  Yes.

23        MJ [COL PARRISH]:  Thank you.

UNCLASSIFIED//FOR PUBLIC RELEASE

1            Defense, we've had some 802's, and I understand that you

2    wish to withdraw the accused's earlier plea of not guilty; is that

3    correct?

4         DC [LTC JACKSON]:  Yes, Your Honor.

5         MJ [COL PARRISH]:  Is that correct, Mr. Khadr, that you wish to

6    withdraw the earlier plea of not guilty; is that correct?

7         ACC [MR. KHADR]:  Yes.

8         MJ [COL PARRISH]:  I will allow you to withdraw that plea of not

9    guilty.  And please enter your new plea.

10        DC [LTC JACKSON]:  Yes, Your Honor.  The defense waives all

11   previous motions and has no further motions.  Mr. Khadr pleads as

12   follows:

13           To all Charges and their Specifications:    Guilty.

14        MJ [COL PARRISH]:  Have a seat, please.  Thanks.

15   [The defense counsel did as directed.]

16        MJ [COL PARRISH]:  And Mr. Khadr, do you have a copy of the

17   charge sheet there in front of you?

18        ACC [MR. KHADR]:  Yes.

19        MJ [COL PARRISH]:  Okay.  Now, Mr. Khadr, your counsel has

20   entered a plea of guilty on your behalf to all charges and their

21   specifications.

22           Your pleas of guilty will not be accepted unless you

23   understand their meaning and effect.  I'm going to discuss your plea

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1  of guilty with you.  If at any time you have any questions, please

2  feel free to ask me, or you---or you may at any time ask any of your

3  counsel questions as well.

4         And, Mr. Khadr, a plea of guilty is equivalent to a

5  conviction, and it's the strongest form of proof known to the law.

6  On your plea alone, and without receiving any evidence, this court

7  can find you guilty of the offenses which you have pled guilty.  Your

8  plea will not be accepted unless you understand that by your plea you

9  admit every act and element of the offenses to which you have pled

10  guilty.  Also, you must be pleading guilty, and I must be convinced

11  that you are pleading guilty because you actually believe that you

12  are guilty.  And if you not--if you do not think that you are guilty,

13  then you should not plead guilty.

14         Have you understood what I said so far, sir?

15  ACC [MR. KHADR]:  Yes.

16  MJ [COL PARRISH]:  Okay.  By your plea of guilty, you give up or

17  waive certain rights.  That first of all, you give up the right to

18  say nothing at all about these offenses.

19         Second, you give up your right to have a trial of the facts

20  by this commission, that is, your right to have this commission

21  decide whether you're guilty or not guilty based upon the evidence

22  the prosecution would present and upon any evidence you may

23  introduce.

UNCLASSIFIED//FOR PUBLIC RELEASE

1        And you also give the--give up the right to confront the
2    witnesses called against you and to call witnesses on your own behalf
3    during any findings portion of this commission.  Do you understand
4    that, sir?

5        ACC [MR. KHADR]:  Yes.

6        MJ [COL PARRISH]:  Now, sir, if you continue with your guilty
7    plea, you'll be placed under oath, and I will question you to
8    determine whether you're, in fact, guilty of these offenses.  Do you
9    understand that, sir?

10        ACC [MR. KHADR]:  Can you repeat the question?

11        MJ [COL PARRISH]:  Do you understand that if you continue with
12    your plea of guilty, I will question you about the offenses and that-
13    -in order to determine whether or not you are, in fact, guilty.  You
14    understand that?

15        ACC [MR. KHADR]:  Yes.

16        MJ [COL PARRISH]:  Okay.  Do you also understand that if you say
17    anything during our discussion that is untrue, then there's a
18    possibility that you'd be charged later with charges of perjury and
19    making false statements.  Do you understand that?

20        ACC [MR. KHADR]:  Yes.

21        MJ [COL PARRISH]:  Okay.

22        Would one of the counsel please place the accused under
23    oath or affirmation?

UNCLASSIFIED//FOR PUBLIC RELEASE

1      ATC [CAPT ▓▓▓▓]:  Yes, sir.

2  [The accused was sworn by the assistant trial counsel, Captain

3  ▓▓▓▓]

4      MJ [COL PARRISH]:  Have a seat, please, sir.

5  [The accused and assistant trial counsel did as directed.]

6      MJ [COL PARRISH]:  Now, I understand there is a stipulation of

7  fact?

8      CTC [MR. ▓▓▓▓]:  Yes, sir.

9      MJ [COL PARRISH]:  And that has been marked as an appellate

10  exhibit of some sort; either one, they're marked as an exhibit;

11  prosecution exhibit, probably?

12  [The stipulation of fact was marked as Prosecution Exhibit 12.]

13      MJ [COL PARRISH]:  Okay.  The stipulation of fact is marked as

14  Prosecution Exhibit 12.

15         Mr. Khadr, do you have a copy of that in front of you?

16      ACC [MR. KHADR]:  Yes.

17      MJ [COL PARRISH]:  And, Mr. Khadr, and this is all in English,

18  but I—not just do I understand, I know that your English is fairly

19  fluent, so you're able to understand this entire document; would that

20  be fair to say?

21      ACC [MR. KHADR]:  Yes.

22      MJ [COL PARRISH]:  Okay.  The last page of the stipulation, Mr.

23  Khadr, has a signature on it.  Above your signature block, is that

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1   your signature?

2          ACC [MR. KHADR]:  Yes.

3          MJ [COL PARRISH]:  And, sir, did you read this before you signed

4   it?

5          ACC [MR. KHADR]:  Yes.

6          MJ [COL PARRISH]:  And did you discuss the contents of this

7   agreement with your counsel before you signed it?

8          ACC [MR. KHADR]:  Yes.

9          MJ [COL PARRISH]:  And, sir, do you understand what's in the

10  agreement---or what's in the stipulation?

11          ACC [MR. KHADR]:  Yes.

12          MJ [COL PARRISH]:  And do counsel for both sides agree with the

13  stipulation and your signatures are on it?

14          CTC [MR.          :  Yes, sir.

15          DC [LTC JACKSON]:  Yes, Your Honor.

16          ADC [MAJ          :  Yes, Your Honor.

17          MJ [COL PARRISH]:  Now, Mr. Khadr, the way a stipulation of fact

18  works, it's an agreement between yourself and counsel that the

19  contents of the stipulation are true, and if entered into evidence

20  are things that I may consider in determining whether, in fact,

21  you're guilty of the offenses.  Do you understand that?

22          ACC [MR. KHADR]:  Yes.

23          MJ [COL PARRISH]:  Now, understand that you have the right to

UNCLASSIFIED//FOR PUBLIC RELEASE

1  refuse to enter into or to sign the stipulation.  Do you understand

2  that?

3       ACC [MR. KHADR]:  Yes.

4       MJ [COL PARRISH]:  And you understand that I must have your

5  consent in order to accept this stipulation.  Do you understand that?

6       ACC [MR. KHADR]:  Yes.

7       MJ [COL PARRISH]:  And you understand you should do this only if

8  you truly believe it's in your best interest.  Do you understand

9  that?

10      ACC [MR. KHADR]:  Yes.

11      MJ [COL PARRISH]:  Okay.  Now, the stipulation, Mr. Khadr,

12  although it does not--has no page numbers on it, it does--it is

13  numbered by paragraph and has 50 paragraphs.  You understand that,

14  right, sir?

15      ACC [MR. KHADR]:  Yes.

16      MJ [COL PARRISH]:  And you've read every paragraph; would that

17  be fair to say, sir?

18      ACC [MR. KHADR]:  Yes.

19      MJ [COL PARRISH]:  And then do you agree to the contents of each

20  paragraph, sir?

21      ACC [MR. KHADR]:  Yes.

22      MJ [COL PARRISH]:  And do you understand that once this

23  agreement is accepted--or once the stipulation is accepted into

UNCLASSIFIED//FOR PUBLIC RELEASE

1   evidence, then it's going to be difficult to change the contents of

2   it?  Do you understand that?

3       ACC [MR. KHADR]:  Yes.

4       MJ [COL PARRISH]:  Has anyone forced you to enter into this

5   stipulation?

6       ACC [MR. KHADR]:  No.

7       MJ [COL PARRISH]:  Now, if I admit the stipulation into

8   evidence, it will be used in two ways.  First, as I've already

9   explained to you, I'll use it to determine whether or not you're

10  guilty of the offenses; and secondly, when the members come in

11  tomorrow, they'll also have it to help determine an appropriate

12  sentence.  Do you understand that?

13      ACC [MR. KHADR]:  Yes.

14      MJ [COL PARRISH]:  Okay.  And do counsel agree to those uses as

15  well?

16      CTC [MR.         :  Yes, sir.

17      DC [LTC JACKSON]:  Yes, sir.

18      MJ [COL PARRISH]:  As I--as I have already explained to you, Mr.

19  Khadr, that if the stipulation is somehow contradicted after I've

20  accepted it, then I'll have to reopen the inquiry.  So you should let

21  me know if there is anything in the stipulation you believe is

22  untrue.  Do you understand that?

23      ACC [MR. KHADR]:  Yes.

UNCLASSIFIED//FOR PUBLIC RELEASE

1       MJ [COL PARRISH]:  Okay.  Now, Mr. Khadr, I understand that you

2   have read this at least once before.  Do you need to read it again

3   this morning before we proceed any further?

4       ACC [MR. KHADR]:  No.

5       MJ [COL PARRISH]:  Very well.  And then, Mr. Khadr, do you—are

6   you willing to admit the--admit to me that the information in the

7   stipulation is, in fact, correct?

8       ACC [MR. KHADR]:  Yes.

9       MJ [COL PARRISH]:  Okay.

10          Defense, any objection to Prosecution Exhibit 12 for

11  identification?

12      DC [LTC JACKSON]:  No objection, Your Honor.

13      MJ [COL PARRISH]:  It's admitted as marked, subject to my

14  acceptance of the accused's guilty plea.  And by that, I mean that

15  the stipulation will not be released until after I've accepted it,

16  accepted the plea, and after the stipulation has been published to

17  the members.  So tomorrow morning after it's published to the

18  members, I'll permit it to be released.  And the reason I'm doing

19  that is I want to minimize the risk that the members might

20  inadvertently hear about something in the stipulation that they

21  shouldn't hear before we start court tomorrow; that's why I'm doing

22  that.  But tomorrow morning after it's been published, then the

23  stipulation may be released.  And I would hope that someone from OMC

UNCLASSIFIED//FOR PUBLIC RELEASE

1    would take steps to facilitate an immediate release of the

2    stipulation as soon as it's published to the members.

3          Okay, Mr. Khadr, what I'm now going to do is explain to you

4    the elements of the offenses to which you have pled guilty.  And by

5    that, I mean the facts which the government would have to prove

6    beyond a reasonable doubt before you could be found guilty if you had

7    pled not guilty.  After I list the element for each offense, we'll

8    have a discussion about that particular offense.

9          Okay.  There--Mr. Khadr, as you see on your charge sheet,

10   in The Specification of Charge I, you're charged with the offense of

11   murder in violation of the law of war.  Those elements are as

12   follows:

13         One, that U.S. Army Sergeant First Class Christopher Speer

14   is dead;

15         Two, the death of Sergeant First Class Speer resulted from

16   your act or omission on or about 27 July 2002 in Afghanistan;

17         Three, the killing was unlawful;

18         Four, you intended to kill a person;

19         Five, the killing was in violation of the law of war; and

20         Six, the killing took place in the context of and was

21   associated with hostilities.

22         Now, sir, I'm going to read you some definitions.  And, Mr.

23   Khadr, some of these definitions will apply to more than one offense.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    But since it applies to more than one offense, I will only read the

2    definition to you once, unless you ask me to reread it to you.  So

3    here are the definitions, sir.

4            Killing a person is unlawful when done without legal

5    justification or excuse.

6            The phrase "in violation of the law of war" means a person

7    was acting as a combatant but did not meet the requirements for being

8    a lawful combatant.

9            A "lawful combatant" is a person who is:

10           A) A member of the regular force of a State party engaged

11   in hostilities against another State; or

12           B) A member of a militia, volunteer corps, or organized

13   resistance movement belonging to a State--excuse me--- belonging to a

14   State party engaged in such hostilities which meet all of the

15   following criteria:

16               One, are under a responsible command;

17               Two, wear a fixed distinctive sign recognizable at a

18   distance;

19               Three, carry their arms openly; and

20               Four, abide by the law of war; or

21           C) A member of a regular armed force who professes

22   allegiance to a government engaged in such hostilities, but not

23   recognized by the United States.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1           Failure to meet at least one of the above criteria, that
2    is, (A), (B) or (C), renders a person an unlawful combatant.  A
3    person who is an unlawful combatant and engages in combat activities
4    is in violation of the law of war.

5           In determining whether hostilities existed between the
6    United States and al Qaeda and when such hostilities may have begun,
7    you may consider, but not limited to, such things as: the length,
8    duration, and intensity of the hostilities between the parties;
9    whether there was protracted armed violence between government
10   authorities and organized armed groups; whether and when the United
11   States decided to employ the combat capabilities of its armed forces
12   to meet the al Qaeda threat; and the number of persons killed or
13   wounded on each side; the statements of the leaders of either side
14   indicating their perceptions regarding the existence of an armed
15   conflict, including the presence or absence of a declaration to that
16   effect.

17          In determining whether the alleged offenses took place in
18   the context of and associated with hostilities, you may consider, but
19   not limited to, such things as: did you act during the period of
20   hostilities; did you act under the authority of or on behalf of a
21   party to the hostilities; and whether it was substantially related to
22   hostilities.

23          Do you understand those elements, sir?

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    ACC [MR. KHADR]:  Yes.

2    MJ [COL PARRISH]:  Are you willing to admit to me that each of

3    those elements is true?

4    ACC [MR. KHADR]:  Yes.

5    MJ [COL PARRISH]:  Okay.  Now, sir, the one thing I want to talk

6    to you about, Mr. Khadr, is the jurisdictional issue.  And that is

7    addressed in paragraph 2 of the stipulation.  So take a look at the

8    stipulation there, Mr. Khadr.

9         Paragraph 2 of the stipulation, it has eight various

10   paragraphs, and that stipulation explains how you fit within the

11   definition of an alien unprivileged enemy belligerent.  Do you

12   understand that, sir?

13   ACC [MR. KHADR]:  Yes.

14   MJ [COL PARRISH]:  Now, that particular element, being an alien

15   unprivileged enemy belligerent, is an element of each and every

16   offense.  So I'm only going to discuss with you once that particular

17   element.

18        Now, based on your agreement that the stipulation of fact

19   is true, sir, are you willing to admit that you are--that you meet

20   the definition of an alien unprivileged enemy belligerent?

21   ACC [MR. KHADR]:  Yes.

22   MJ [COL PARRISH]:  Okay.  Mr. Khadr, in Charge II, you're

23   charged with the offense of attempted murder in violation of the law

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1   of war.  Those elements are as follows:

2          One, you, between on or about 1 June 2002 and on or about

3   27 July 2002, in and around Afghanistan, did a certain overt act,

4   that is, converted landmines into improvised explosive devices and

5   planted those devices in the ground while in the context of and

6   associated with armed conflict; .

7          Two, your planting of such improvised explosive devices was

8   done with the specific intent to kill U.S. or coalition forces and

9   commit murder in violation of the law of war;

10         Three, your act of planting improvised explosive devices

11  amounted to more than mere preparation; and

12         Four, your act of planting improvised explosive devices

13  apparently tended to the effect of the commission of the intended

14  offense, that is, murder in violation of the law of war.

15         Let me give you some definitions as to the offense of

16  attempt.

17         "Preparation" consists of devising or arranging the means

18  or measures necessary for the commission of the attempted offense.

19  You must admit that you went beyond preparatory steps, and that your

20  act amounted to a substantial step and a direct movement toward the

21  commission of the intended offense.

22         "A substantial step" is one that is strongly corroborative,

23  that it shows or proves your criminal intent and is indicative of

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1   your resolve to unlawfully kill.  Proof that a person was actually

2   killed is not required.  However, you must admit that you

3   specifically intended to kill U.S. or coalition forces without

4   justification or excuse in violation of the law of war.  The intent

5   to kill does not have to exist for any measurable or particular

6   length of time before the acts that constitute the attempt.

7          Now, the other phrases in those elements, sir, I've already

8   defined for you.  Do you understand those elements, Mr. Khadr?

9       ACC [MR. KHADR]:  Yes.

10      MJ [COL PARRISH]:  And do you agree and admit that those--that

11   each of those elements is, in fact, true?

12      ACC [MR. KHADR]:  Yes.

13      MJ [COL PARRISH]:  And in Charge III, you are charged with the

14   offense of conspiracy to commit the following offenses: attacking

15   civilians; attacking civilian objects; murder in violation of the law

16   of war; destruction of property in violation of the law of war; and

17   terrorism.  And those elements are as follows:

18          One, that you, from at least 1 June 2002 to on or about 27

19   July 2002, in and around Afghanistan, entered into an agreement with

20   one or more of the following persons: Usama bin Laden; Ayman al

21   Zawahiri; Sheikh Sayeed al Masri; Saif al Adel; Ahmed Sa'id Khadr,

22   also known as Abu Al-Rahman Al-Kanadi; or various other members and

23   associates, known or unknown, of the al Qaeda organization, to commit

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1  one or more of the following offenses: attacking civilians; attacking

2  civilian objects; murder in violation of the law of war; destruction

3  of property in violation of the law of war; and terrorism;

4        Two, you knew that--you knew the unlawful purpose of the

5  agreement and joined willfully, that is, with the intent to further

6  that unlawful purpose; and

7        Three, you knowingly committed at least one of the

8  following overt acts in order to accomplish some objective or purpose

9  of the agreement.  And the overt acts are as follows:

10        One, on or about June 2002, you received approximately one

11  month of one-on-one private al Qaeda basic training from an al Qaeda

12  member named "Abu Haddi", consisting of training in the use of rocket

13  propelled grenades, rifles, pistols, hand grenades, and explosives.

14        B) On or about June 2002, you conducted surveillance and

15  reconnaissance against the United States military in support of

16  efforts to target U.S. forces in Afghanistan.

17        C) On or about July 2002, you attended one month of land

18  mine training.

19        D) On or about July 2002, you joined a group of al Qaeda

20  operatives and converted landmines to improvised explosive devices

21  and planted said improvised explosive devices in the ground where,

22  based on previous surveillance, U.S. troops were expected to be

23  traveling.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1           E) On or about 27 July 2002, you engaged U.S. military and
2   coalition forces with small arms fire, killing two Afghan Militia
3   Force members.

4           F) You threw or fired grenades at nearby coalition forces
5   resulting in numerous injuries.

6           G) When U.S. forces entered the compound upon completion of
7   the firefight, you threw a grenade, killing Sergeant First Class
8   Christopher Speer.

9           Let me give you some definitions, sir.

10          Proof that the offense of: attacking civilians; attacking
11  civilian objects; murder in violation of the law of war; destruction
12  of property in violation of the law of war; and terrorism actually
13  occurred is not required.  However, you must admit the agreement
14  included every element of those intended offenses.

15          Now, the elements of those intended offenses, sir, are as
16  follows.  For attacking civilians:

17          One, there was an engagement--there was engaging in an
18  attack;

19          Two, the object to be attacked was a civilian population
20  such as individual civilians--was a civilian population as such, or
21  individual civilians not taking direct or active part in hostilities;

22          C) Intending civilian population as such or intending--or
23  individual civilians not taking direct or active part in hostilities

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

```
 1  to be an object of the attack;

 2           Three, knowing or you should have known of the factual

 3  circumstances that established the civilian status; and

 4           E)--or excuse me--five, the attack took place in the

 5  context of and associated with hostilities.

 6           The elements for attacking civilian objects are as follow:

 7           One, engaging in an attack;

 8           Two, the object of the attack was civilian property, that

 9  is, property that was not military--that was not a military

10  objective;

11           Three, intending such civilian property to be an object of

12  the attack;

13           Four, knowing or should have known that such property was

14  not a military objective, and

15           Five, the attack took place in the context of and was

16  associated with hostilities.

17      MJ [COL PARRISH]:  Mr. Khadr, can I ask you a real big favor for

18  me?

19      ACC [MR. KHADR]:  Go ahead.

20      MJ [COL PARRISH]:  The microphone, when you--when you do

21  [indicating touching the microphone] that----

22      ACC [MR. KHADR]:  Oh.

23      MJ [COL PARRISH]:  ----it creates some noise, and it's difficult
```

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1   for the court reporter to then hear, so I----

2   [The accused moved the microphone.]

3       MJ [COL PARRISH]:  Thanks very much, sir.  I appreciate that.

4           The elements of murder in violation of the law of war are

5   as follows:

6           A person is dead;

7           The death resulted from your act or omission;

8           The killing was unlawful;

9           Three, you intended to kill a person--four, you intended to

10  kill a person;

11          Five, the killing was in violation of the law of war; and

12          Six, the killing took place in the context of and

13  associated with hostilities.

14          The elements of destruction of property in violation of law

15  of war as follows:

16          Destroying property, one;

17          Two, the property belonged to another person;

18          Three, destroying the property without that person's

19  consent;

20          Four, intending to destroy such property;

21          Five, destruction of the property was in violation of the

22  law of war; and

23          Six, the destruction took place in the context of and was

UNCLASSIFIED//FOR PUBLIC RELEASE

1   associated with hostilities.

2         The elements of terrorism are as follows:

3         Intentionally killing or inflicting great bodily harm on

4   one or more protected persons engaged in an act that evinced a wanton

5   disregard for human life;

6         Two, doing so in a manner calculated to influence or affect

7   the conduct of government or civilian population by intimidation or

8   coercion, or to retaliate against government conduct; and

9         Three, killing, harming, or the wanton disregard for human

10  life took place in the context of and was associated with

11  hostilities.

12        And I'll give you some definitions for the offense of

13  conspiracy itself.

14        The agreement in a conspiracy does not have to be in any

15  particular form or expressed in formal words.  It is sufficient if

16  the minds of the parties reach a common understanding to accomplish

17  the object of the conspiracy, and this may be proved by the conduct

18  of the parties.  The agreement does not have to express the manner in

19  which the conspiracy is to be carried out or what part each

20  conspirator is to play.  The overt act required for this offense does

21  not have to be a criminal act, but it must be a clear indication that

22  the conspiracy is being carried out.  And the overt act may be done

23  either at the time of or following the agreement.

UNCLASSIFIED//FOR PUBLIC RELEASE

1        The overt act must be clearly independent of the agreement

2    itself; that is, it must be more than merely the act of entering into

3    an agreement or an act necessary to reach the agreement.  And

4    furthermore, there is no requirement that all co-conspirators be

5    named in the specification.

6        MJ [COL PARRISH]:  Now, Mr. Khadr, any questions about the

7    elements of conspiracy?

8        ACC [MR. KHADR]:  No.

9        MJ [COL PARRISH]:  And sir, are you willing to admit, and do

10   admit, that each of those elements I have described to you is, in

11   fact, true?

12       ACC [MR. KHADR]:  Yes.

13       MJ [COL PARRISH]:  Mr. Khadr, in Specification 1 of Charge IV,

14   you are charged with the offense of providing material to support

15   terrorism, and those elements are as follows:

16       One, that you, from at least June 2002 through on or about

17   27 July 2002, in or around Afghanistan, provided material support or

18   resources to an international terrorist organization engaged in

19   hostilities against the United States, that is, al Qaeda founded by

20   Usama bin Laden, in or about 1989; and

21       Two, you intended to support--you intended to provide

22   material support or resources, that is, yourself, to such an

23   international terrorist organization;

UNCLASSIFIED//FOR PUBLIC RELEASE

1        Three, you knew that such organization has engaged or

2    engages in terrorism, including attacks against American Embassies in

3    Kenya and Tanzania in August 1998, the attack against the USS COLE in

4    October 2000, the attacks on the United States on September 11, 2001,

5    and further attacks, continuing to date against the United States;

6        Four, the conduct took place in the context of and was

7    associated with hostilities; and

8        Five, you provided material support or resources to al

9    Qaeda including, but not limited to, the following.  And the

10   following is as follows:

11       One--or A) On or about June 2002, you received

12   approximately one month of one-on-one, private al Qaeda basic

13   training from an al Qaeda member named "Abu Haddi" consisting of

14   training in the use of rocket propelled grenades, rifles, pistols,

15   hand grenades, and explosives.

16       Two, on or about June 2002, you conducted surveillance and

17   reconnaissance against the U.S. military in support of efforts to

18   target U.S. forces in Afghanistan.

19       Three, on or about July 2002, you attended one month of

20   landmine training.

21       Four, on or about July 2002, you joined a group of al Qaeda

22   operatives and converted landmines to improvised explosive devices

23   and planted said improvised explosive devices in the ground where,

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    based on previous surveillance, U.S. troops were expected to travel.

2            Five, on or about 27 July 2002, you engaged U.S. military

3    and coalition personnel with small arms fire, killing two Afghan

4    Militia forces.

5            Six, you threw and/or fired grenades at nearby coalition

6    forces resulting in numerous injuries.

7            And, seven, when U.S. ground forces entered the compound

8    upon completion of the firefight, you threw a grenade, killing SFC

9    Christopher Speer.

10           And I'll give you some definitions for material support.

11           "Material support or resources" means any property,

12   tangible or intangible; or service, including currency or monetary

13   instruments or financial services; lodging; training; expert advice

14   or assistance; safehouses; false documentation or identification;

15   communications equipment; facilities; weapons; lethal substances;

16   explosives; personnel, either one or more individuals who may be

17   yourself; transportation; except medicine or religious materials.

18           Mr. Khadr, do you understand those elements and their

19   definitions?

20      ACC [MR. KHADR]:  Yes.

21      MJ [COL PARRISH]:  And, sir, do you admit that each of those

22   elements I read to you is true?

23      ACC [MR. KHADR]:  Yes.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1       MJ [COL PARRISH]:  Now, sir, in Specification 2 of Charge IV,

2   you're also charged with the offense of providing material support to

3   terrorism, and those elements are as follows:

4              One, from at least June 2002 through on or about 27 July

5   2002, in or around Afghanistan, you provided material support or

6   resources, to wit:  yourself to the use and preparation for, or in

7   carrying out an act of terrorism;

8              Two, you knew or intended the material support or resources

9   were to be used for those purposes;

10              Three, the conduct took place in the context of and was

11  associated with hostilities; and

12              Four, you provided material support or resources in support

13  of acts of terrorism including, but not limited to the following:

14              One, in or about June 2002, you received approximately one

15  month of one-on-one private al Qaeda basic training from an al Qaeda

16  member named Abu Haddi, consisting of training in the use of rocket

17  propelled grenades, rifles, pistols, hand grenades, and explosives.

18              Two, on or about June 2002, you conducted surveillance and

19  reconnaissance against the U.S. military in support of efforts to

20  target U.S. forces in Afghanistan.

21              Three, on or about July 2002, you attended one month of

22  land mine training.

23              Four, on or about July 2002, you joined a group of al Qaeda

UNCLASSIFIED//FOR PUBLIC RELEASE

1    operatives and converted land mines to improvised explosive devises

2    and planted said improvised explosive devices in the ground where,

3    based on previous surveillance, U.S. troops were expected to travel.

4            Five, on or about July--27 July 2002, you engaged U.S.

5    military and coalition personnel with small arms fire, killing two

6    Afghan Militia Force members.

7            Six, you threw and/or fixed grenades--you threw and/or

8    fired grenades at nearby coalition forces resulting in numerous

9    injuries.

10          And, seven, when U.S. forces entered the compound upon

11    completion of the firefight, you threw a grenade, killing Sergeant

12    First Class Speer.

13          Now, sir, the same definitions I provided you earlier apply

14    to that specification as well.

15          And, Mr. Khadr, do you have any questions about the

16    elements and definitions of that offense?

17    ACC [MR. KHADR]:  No.

18    MJ [COL PARRISH]:  And, sir, do you admit that those elements

19    are--that each one of those elements is, in fact, true?

20    ACC [MR. KHADR]:  Yes.

21    MJ [COL PARRISH]:  In Charge V, you are charged with the offense

22    of spying, and those elements are as follows:

23          One, on or about June 2002, in Afghanistan, you collected

...UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    certain information by clandestine means or while acting under false

2    pretenses, and on at least one occasion, at the direction of a known

3    al Qaeda member or associate, and in preparation for operations

4    targeting U.S. forces, you conducted surveillance of U.S. forces and

5    made notations as to the number and types of vehicles, distances

6    between vehicles, approximate speed of the convoy, time, and

7    direction of the convoys;

8           Two, you intended or had reason to believe the information

9    collected would be used to injure the United States or to provide an

10   advantage to a foreign power;

11          Three, you intended to convey such information to an enemy

12   of the United States or one of the co-belligerents of the enemy,

13   namely al Qaeda or its associated forces;

14          Four, the conduct was in violation of the law of war; and

15          Five, the conduct took place in the context of and was

16   associated with hostilities.

17          The same definitions I read to you, sir, apply to the

18   definitions in this offense as well.

19          Mr. Khadr, do you understand those elements and their

20   definitions?

21       ACC [MR. KHADR]:  Yes.

22       MJ [COL PARRISH]:  Are you willing to admit to me that each of

23   those elements is, in fact, true?

UNCLASSIFIED//FOR PUBLIC RELEASE

1    ACC [MR. KHADR]:  Yes.

2    MJ [COL PARRISH]:  And, Mr. Khadr, is it your voluntary decision

3  to continue with your plea of guilty to these offenses?

4    ACC [MR. KHADR]:  Yes.

5    MJ [COL PARRISH]:  Defense, are you satisfied with the inquiry?

6    DC [LTC JACKSON]:  Yes, Your Honor.

7    MJ [COL PARRISH]:  Government, are you satisfied with the

8  inquiry?

9    CTC [MR. ▓▓▓▓▓▓▓ :  Yes, Your Honor.

10   MJ [COL PARRISH]:  Mr. Khadr, do you understand under the Manual

11 for Military Commissions, notwithstanding any provisions that may

12 limit the sentence in your pretrial agreement, the maximum punishment

13 that the members may impose is confinement for life.  Do you

14 understand that, sir?

15   ACC [MR. KHADR]:  Yes.

16   MJ [COL PARRISH]:  And do counsel agree with that maximum

17 punishment?

18   CTC [MR. ▓▓▓▓▓▓▓ :  Yes, Your Honor.

19   DC [LTC JACKSON]:  Yes, sir.

20   MJ [COL PARRISH]:  I understand there is a pretrial agreement,

21 and that's been marked as an appellate exhibit.

22   REPORTER:  Yes, sir.

23 [The court reporter handed Appellate Exhibit 341 to the military

UNCLASSIFIED//FOR PUBLIC RELEASE

1    judge.]

2        MJ [COL PARRISH]:  Okay.  The agreement is marked as Appellate

3    Exhibit 341.  Mr. Khadr, do you have a copy of that in front of you,

4    sir?

5        ACC [MR. KHADR]:  Yes.

6        MJ [COL PARRISH]:  And, Counsel, there is no quantum portion;

7    everything is contained in the agreement itself.  Is that correct?

8        DC [LTC JACKSON]:  That's correct, Your Honor.

9        CTC [MR. ▓▓▓▓▓▓▓]:  That's correct, sir.

10       MJ [COL PARRISH]:  Okay.  Mr. Khadr, on page 6 there's a

11   signature there at the bottom of the page.  Is that your signature,

12   sir?

13   [Mr. Khadr looked through the pages of Appellate Exhibit 341.]

14       MJ [COL PARRISH]:  At least it's page 6 on my agreement.

15       ACC [MR. KHADR]:  Yes.

16       MJ [COL PARRISH]:  And, Mr. Khadr, did you read this document

17   thoroughly before you signed it?

18       ACC [MR. KHADR]:  Yes.

19       MJ [COL PARRISH]:  And, sir, did you also discuss this with your

20   counsel as well as with your consultants?

21       ACC [MR. KHADR]:  Yes.

22       MJ [COL PARRISH]:  And your counsel explained this agreement to

23   you before you signed it?  Would that be fair to say, sir?

UNCLASSIFIED//FOR PUBLIC RELEASE

1        ACC [MR. KHADR]:  Yes.

2        MJ [COL PARRISH]:  And, Mr. Khadr, do you understand the

3   contents of your agreement?

4        ACC [MR. KHADR]:  Yes.

5        MJ [COL PARRISH]:  Did anyone in any way force you to make this

6   agreement, sir?

7        ACC [MR. KHADR]:  No.

8        MJ [COL PARRISH]:  And, Mr. Khadr, does this agreement contain

9   all the understandings or agreements that you have in this case?

10       ACC [MR. KHADR]:  Yes.

11       MJ [COL PARRISH]:  Now, Mr. Khadr, has anyone made any promises

12   to you that are not in this agreement in an effort to get you to

13   plead guilty?

14       ACC [MR. KHADR]:  No.

15       MJ [COL PARRISH]:  And, Counsel, is Appellate Exhibit 341 the

16   full and complete agreement in this case?

17       DC [LTC JACKSON]:  Yes, sir.

18       CTC [MR. ███████:  Yes, sir.

19       MJ [COL PARRISH]:  Now, Mr. Khadr, as a general rule what a

20   pretrial agreement means is that it's an agreement between you and

21   the convening authority that you agree to plead guilty and in return

22   the convening authority agrees to take some favorable action in your

23   case, usually in the form of agreeing to limit the sentence he will

UNCLASSIFIED//FOR PUBLIC RELEASE

1    approve.  Do you understand that?

2         ACC [MR. KHADR]:  Yes.

3         MJ [COL PARRISH]:  Okay.  Now, the law requires that I discuss

4    the contents of your agreement with you, so we're going to discuss

5    the contents of your agreement with you right now, which is Appellate

6    Exhibit 341.  And you've already told me that you had plenty of time

7    prior to this date today to read this agreement.  Is that fair to

8    say, sir?

9         ACC [MR. KHADR]:  Yes.

10        MJ [COL PARRISH]:  Now, when we're discussing the terms of the

11   agreement, Mr. Khadr, I note that the sentence limitation is in

12   paragraph 6, I believe; yes, paragraph 6a.

13        Now, sir, what we're--we had an agreement with--a

14   discussion with counsel and, Mr. Khadr, what I'm going to do during

15   this discussion today is because the members will be announcing the

16   sentence in this case after a sentencing hearing, and the members

17   will not know that there's a pretrial agreement and certainly will

18   not know what the limit might be, because I'll--as I will explain to

19   you later, you get the lesser of whatever the members sentence you to

20   or this agreement.  And, so, in order to minimize the risk that the

21   members might learn that there is an agreement or what the limit is

22   in the agreement, we're not going to discuss this morning the exact

23   amount of the limit here in court, although we both can read it and

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1    understand what it is.  Do you understand that, Mr. Khadr?

2        ACC [MR. KHADR]:  Yes.

3        MJ [COL PARRISH]:  Now, the pretrial agreement will not be

4    released until after the members have announced their sentence.  I

5    want to, again, minimize any risk there might be in the members

6    hearing or reading about something that they should not know about.

7            But, Government, I want you to assist in making sure that

8    OMC releases the entire pretrial agreement immediately after sentence

9    is announced.

10       CTC [MR.    :  Yes, sir.

11       MJ [COL PARRISH]:  Now, in the terms of the agreement there,

12   Mr. Khadr, there in--on the first and second pages, you understand

13   that by pleading guilty you've agreed to enter into a stipulation.

14   You understand that, right, sir?

15       ACC [MR. KHADR]:  Yes.

16       MJ [COL PARRISH]:  And you also understand that you are waiving

17   certain things by the agreement, that is, any further testing of

18   certain items.  Do you understand that, sir?

19       ACC [MR. KHADR]:  Yes.

20       MJ [COL PARRISH]:  And you also understand, sir, that in

21   paragraph 1f that you will be signing a document waiving any

22   appellate rights in this case.  Do you understand that, sir?

23       ACC [MR. KHADR]:  Yes.

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1      MJ [COL PARRISH]:  Has that document, in fact, been signed yet?

2   If not, don't worry.  It doesn't need to be signed yet.  If it hasn't

3   been, I will discuss it with Mr. Khadr at a later time during this

4   week.  I don't need to discuss it right now.

5      DC [LTC JACKSON]:  That's fine, Your Honor; thank you.

6      MJ [COL PARRISH]:  Okay.  But you understand, Mr. Khadr, that

7   part of the agreement that you have is that you are waiving any

8   rights to appeal any parts of this trial.  Do you understand that,

9   sir?

10      ACC [MR. KHADR]:  Yes.

11      MJ [COL PARRISH]:  Okay.  And you also understand, sir, that in

12   paragraph 1g that you agree not to initiate any litigation against

13   the United States.  Do you understand that, sir?

14      ACC [MR. KHADR]:  Yes.

15      MJ [COL PARRISH]:  And you also--sir, there is paragraph 2i on

16   page 2 of the agreement there at the bottom, that you agree--while

17   you're still in the custody of the United States, agree to be

18   interviewed by U.S. personnel.  You understand that?

19      ACC [MR. KHADR]:  Yes.

20      MJ [COL PARRISH]:  Now, there in paragraph 1k on page 3--well,

21   before we get to that, let's turn to paragraph 5g on page 5, sir.

22   Your understanding, sir, both in paragraphs 5g and in 6b that there

23   is--you have an understanding, an agreement with the United States

UNCLASSIFIED//FOR PUBLIC RELEASE

```
 1   and with the convening authority that after you have served one

 2   year's confinement that the convening authority and the U.S.

 3   government will support your request for a transfer to Canada.  Do

 4   you understand that, sir?

 5        ACC [MR. KHADR]:  Yes.

 6        MJ [COL PARRISH]:  But you also understand that the decision to

 7   approve that ultimately rests upon the Canadian government.  Do you

 8   understand that, sir?

 9        ACC [MR. KHADR]:  Yes.

10        MJ [COL PARRISH]:  And I understand that in paragraph 1--excuse

11   me--5h, that there were to be diplomatic notes exchanged between the

12   United States and the Canadian government reflecting this

13   understanding.  Is that correct, Mr. Khadr?

14        ACC [MR. KHADR]:  Yes.

15        MJ [COL PARRISH]:  And I understand those diplomatic notes have,

16   in fact, been exchanged.  Is that correct?

17        ACC [MR. KHADR]:  Yes.

18        DC [LTC JACKSON]:  Yes, sir, that's correct.

19        MJ [COL PARRISH]:  And, as I understand it, they are marked and

20   will be part of the agreement.  Is that my understanding as well?

21        DC [LTC JACKSON]:  Yes, Your Honor; that's the defense's

22   understanding.

23        CTC [MR. ` ` `` ` `:  Yes, sir.
```

UNCLASSIFIED//FOR PUBLIC RELEASE

1      MJ [COL PARRISH]:  Okay.  And those diplomatic notes are

2  Appellate Exhibit 342, which consists of six pages.  They will be

3  part of the pretrial agreement, which will also be subject to being

4  released when the pretrial agreement is released.

5           Again, I just want to take steps to try to minimize

6  anything the members might hear prior to them announcing a sentence.

7  Mr. Khadr, you, in fact, have seen the diplomatic notes that are

8  Appellate Exhibit 342?

9      ACC [MR. KHADR]:  Yes.

10     MJ [COL PARRISH]:  Okay.  And you're satisfied that that

11  satisfies the provisions of the agreement about the diplomatic notes?

12     ACC [MR. KHADR]:  Yes.

13     MJ [COL PARRISH]:  Okay.  So, Mr. Khadr, your understanding

14  then, sir, is that after--assuming that any sentence you receive is

15  more than a year, your understanding then, sir, is after you served a

16  year sentence you would then--you then will have support of the

17  convening authority and the U.S. government in your request to be

18  transferred to Canada?

19     ACC [MR. KHADR]:  Yes.

20     MJ [COL PARRISH]:  Okay.  And, Defense Counsel, are these your

21  signatures on the documents as well?

22     DC [LTC JACKSON]:  Yes, Your Honor.

23     CTC [MR. ▓▓▓▓▓▓▓    ;  Sir, I'm sorry to interrupt.  If I could

UNCLASSIFIED//FOR PUBLIC RELEASE

1    just ask the military judge to clarify; that transfer is to serve the

2    remainder of his sentence in Canada.

3         MJ [COL PARRISH]:  Yes.

4         CTC [MR. ███████ :  I don't know that that was made clear on

5    the record.

6         MJ [COL PARRISH]:  You understand that?

7         ACC [MR. KHADR]:  Yes.

8         DC [LTC JACKSON]:  Your Honor, just to add also; it's consistent

9    with Canadian law, and it's an important thing for him to understand.

10        MJ [COL PARRISH]:  Yes.

11        DC [LTC JACKSON]:  Now, that it's been brought up.

12        MJ [COL PARRISH]:  Yes.  You understand, Mr. Khadr, that if you

13   are transferred to Canada, what Canada--the government of Canada does

14   to you must be consistent with Canadian law.  Do you understand that?

15        ACC [MR. KHADR]:  Yes.

16        MJ [COL PARRISH]:  Okay.  And I'm--I'm going to assume, without

17   asking, that everybody negotiating this agreement understood that all

18   parties and both governments would abide by the law of their own

19   countries in implementing this agreement.

20        Now, Mr. Khadr, I'm not going to discuss every paragraph of

21   this pretrial agreement with you because many of them are very self-

22   explanatory.  But there in paragraph 3c on page 4 at the very top,

23   you agree--you understand that you've agreed to seek the in-court

UNCLASSIFIED//FOR PUBLIC RELEASE

1    testimony, either in court or via video teleconference, of those

2    witnesses listed there?  Do you understand that, sir?

3         ACC [MR. KHADR]:  Yes.

4         MJ [COL PARRISH]:  Okay.  And in paragraph 5 there, sir, in the

5    first couple of paragraphs indicates that you're satisfied with your

6    defense counsel.  Would that be fair to say?

7         ACC [MR. KHADR]:  Yes.

8         MJ [COL PARRISH]:  It would also be fair to say that you're

9    satisfied with the advice you've received from your Canadian

10   consultants?  Would that be fair to say, sir?

11        ACC [MR. KHADR]:  Yes.

12        MJ [COL PARRISH]:  And paragraph 5b also just says, again, what

13   we discussed earlier, that you are, in fact, pleading guilty on your

14   own without any force from anyone else.  Is that fair to say, sir?

15        ACC [MR. KHADR]:  Yes.

16        MJ [COL PARRISH]:  And, Mr. Khadr, again, you understand fully

17   all the terms of your agreement?

18        ACC [MR. KHADR]:  Yes.

19        MJ [COL PARRISH]:  And you believe that those terms have been

20   met thus far?

21        ACC [MR. KHADR]:  Yes.

22        MJ [COL PARRISH]:  And, Defense Counsel, do you also believe

23   that the terms of the agreement are in the best interests of

UNCLASSIFIED//FOR PUBLIC RELEASE

1  Mr. Khadr?

2      DC [LTC JACKSON]:  We do, Your Honor.

3      MJ [COL PARRISH]:  And you also believe, Defense Counsel, that

4  Mr. Khadr fully understands all the terms of his agreement?

5      DC [LTC JACKSON]:  We do, Your Honor.

6      MJ [COL PARRISH]:  Now, Mr. Khadr, do you have any questions

7  about your pretrial agreement?

8      ACC [MR. KHADR]:  No.

9      MJ [COL PARRISH]:  And do counsel for both sides agree with the

10  commission's interpretation of the terms of the pretrial agreement?

11      CTC [MR. ▓▓▓▓▓▓▓▓▓▓▓]:  Yes, sir.

12      DC [LTC JACKSON]:  Yes, sir.

13      MJ [COL PARRISH]:  Now, Defense, you also indicated that you

14  were--I forget if you used the word "waive" or "withdraw" all

15  outstanding motions?

16      DC [LTC JACKSON]:  We withdraw all motions, Your Honor.

17      MJ [COL PARRISH]:  Okay.  And, Defense, have you had enough time

18  and opportunity to discuss this case with Mr. Khadr?

19      DC [LTC JACKSON]:  Yes, Your Honor, we have.

20      MJ [COL PARRISH]:  And, Mr. Khadr, have you had enough time and

21  opportunity to discuss this case with all of your defense counsel and

22  your consultants?

23      ACC [MR. KHADR]:  Yes.

1     MJ [COL PARRISH]:  And, Mr. Khadr, have you, in fact, consulted

2  fully with your defense counsel and your consultants and received the

3  full benefit of their advice?

4     ACC [MR. KHADR]:  Yes.

5     MJ [COL PARRISH]:  And, sir, are you satisfied that their advice

6  is in your best interest?

7     ACC [MR. KHADR]:  Yes.

8     MJ [COL PARRISH]:  And, sir, once again, are you pleading

9  guilty of your own free will?

10    ACC [MR. KHADR]:  Yes.

11    MJ [COL PARRISH]:  Has anyone, again, threatened you in any way

12  to make you plead guilty this morning?

13    ACC [MR. KHADR]:  No.

14    MJ [COL PARRISH]:  And, sir, do you have any questions as to the

15  meaning and impact of your pleas of guilty?

16    ACC [MR. KHADR]:  No.

17    MJ [COL PARRISH]:  Okay.  Sir, I find your pleas of guilty have

18  been made voluntarily and with full knowledge of their meaning and

19  effect.

20        I further find that you have knowingly, intelligently, and

21  consciously waived your rights against self incrimination, your

22  rights to a trial of the facts by this commission, and to be

23  confronted by any witnesses called against you in the findings

UNCLASSIFIED//FOR PUBLIC RELEASE

1  portion of your commission.

2          Accordingly, your pleas of guilty are provident and are

3  accepted; however, I advise you that you may request to withdraw your

4  plea of guilty at any time before the sentence is announced, and if

5  you have a good reason for your request, I will grant it.

6          Now, one thing I want to discuss with you again, Mr. Khadr,

7  just to make sure we're all on the same sheet of music here, there in

8  paragraph 6a on the top of page 6 is the actual sentence limit in

9  this case.  Do you understand that, sir?

10     ACC [MR. KHADR]:  Yes.

11     MJ [COL PARRISH]:  And, sir, you understand you get the benefit

12  of whichever is less.  If the members come back with a sentence

13  greater than that in this agreement, then you get what's in the

14  agreement.  Do you understand that?

15     ACC [MR. KHADR]:  Yes.

16     MJ [COL PARRISH]:  But you--no more--a sentence that's no

17  greater than what's in the agreement can be approved.  Do you

18  understand that?

19     ACC [MR. KHADR]:  Yes.

20     MJ [COL PARRISH]:  And do you understand that if the members

21  come back with a sentence which is less than in the agreement, then

22  no sentence can be approved greater than what the members sentence

23  you to.  Do you understand that?

UNCLASSIFIED//FOR PUBLIC RELEASE

UNCLASSIFIED//FOR PUBLIC RELEASE

1      ACC [MR. KHADR]:  Yes.

2      MJ [COL PARRISH]:  So, you get the benefit of whichever is less.

3  Do you understand that, sir?

4      ACC [MR. KHADR]:  Yes.

5      MJ [COL PARRISH]:  Okay.  Would the accused and counsel please

6  rise?

7  [The accused and his counsel did as directed.]

8      MJ [COL PARRISH]:  Mr. Khadr, in accordance with your pleas, the

9  court finds you:

10          **Of all Charges and Specifications:    Guilty.**

11          You may be seated.

12  [The accused and his counsel took their seats.]

13      MJ [COL PARRISH]:  Now, Mr. Khadr, the sentencing proceedings

14  will start tomorrow at about 9:00 or so when the members arrive.

15  During the sentence proceedings, you have the right to present

16  matters in extenuation and mitigation.  That is, matters about

17  yourself or the offenses that you want the members to--to hear in

18  deciding on your sentence.

19          In addition to the testimony of witnesses and the offering

20  of documents, you yourself may testify under oath as to those matters

21  or you may remain silent, in which case the commission would draw no

22  adverse inference from your silence.

23          On the other hand, if you desire, you may make an unsworn

UNCLASSIFIED//FOR PUBLIC RELEASE