Donald J. Winder (#3519)
Laura H. Tanner (#13882)
WINDER & COUNSEL, P.C.
460 South 400 East
Salt Lake City, UT  84111
Telephone:  (801) 322-2222
Facsimile:  (801) 322-2282
ltanner@winderfirm.com

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAYNE MORRIS, an individual; LEISL MORRIS in her own right,  TABITHA SPEER, in her own right; TABITHA SPEER, as Executrix of the ESTATE OF CHRISTOPHER SPEER; and TABITHA SPEER on behalf of her minor children T.S. and T.S., | MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' DEFAULT JUDGMENT AND ATTORNEY FEES AND COSTS |
| Plaintiffs, | Civil No.: 2:14-cv-00391-DBP |
| v. | Judge Tena Campbell |
| OMAR KHADR, an individual, | |
| Defendant. | |

The Clerk of this Court entered default against Omar Khadr on September 23, 2014. Therefore, Plaintiffs Layne Morris ("Morris"), Leisl Morris, Tabitha Speer, Tabitha Speer, as Executrix of the Estate of Christopher Speer ("Speer"), and Tabitha Speer on behalf of her minor children T.S. and T.S., by and through counsel of record, and pursuant to Rule 55(b)(2), FED.R.CIV.P.,  hereby move the Court to enter default judgment against Defendant as detailed herein, and for an award of attorney fees and costs pursuant to DUCivR  54-2(f).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In approximately June of 2002, Omar Khadr ("Khadr") was sent by his father to serve with members of the Libyan Islamic Fighting Group (LIFG) and al Qaeda.  Khadr attended one-on-one private terrorist training from a known member of al Qaeda in the use of rocket-propelled grenades, various assault rifles, pistols, grenades, and explosives.  Khadr had intimate knowledge of the al Qaeda organization and its goals.  In July 2002, Khadr joined an explosives cell that was made up of terrorists that had associations with both LIFG and al Qaeda.  On July 27, 2002, Khadr was at a compound in Ayub Kheil, Afghanistan with an al Qaeda explosives cell.  U.S. forces received information that suspected members of al Qaeda were operating out of the compound and conducting attacks against U.S. and coalition forces.  U.S. Special Forces along with an Afghan Military Force were sent to investigate the compound.

Khadr and the other al Qaeda cell members refused to come outside of the compound to speak to the U.S. forces, and instead fired on the U.S. forces.  Khadr and other al Qaeda members killed two members of the accompanying Afghan Military Forces from within the compound.   The U.S. soldiers and the al Qaeda cell fought for four hours. Sergeant First Class ("SFC") Christopher Speer and SFC Layne Morris were soldiers in the U.S. Armed Forces involved in the firefight. Khadr had an AK-47 Kalashnikov, a pistol, and took up a fighting position within the compound. U.S. soldiers called in air strikes to bring the protracted firefight to a conclusion.  After the air strikes, the U.S. forces believed the firefight was over, and began clearing the compound.

The U.S. Special Forces unit believed that all individuals in the compound had been killed, but when the Special Forces unit entered the compound, the unit began taking direct fire

from an AK-47.  Khadr had positioned himself behind a crumbling wall and threw a Russian F-1 grenade in the vicinity of the soldiers.  The grenade Khadr threw exploded near Speer, launching shrapnel into his head, causing brain damage.  Speer died 12 days later on August 8, 2002, from the injuries he sustained from the grenade Khadr threw. Other U.S. soldiers, including Morris (who lost his sight in one eye from grenade shrapnel), were injured directly by Khadr's actions or through his aiding and abetting the firefight.

Khadr was subsequently captured by U.S. Forces and detained at Guantanamo Bay, Cuba.  As a result of intervention by the Canadian government, Khadr was eventually released to the custody of the Canadian government.

Plaintiffs in this matter are the victims of Khadr's attack and their family members and legal representatives who seek to hold him accountable as the person who caused their loss.  As a result of Khadr's attack, Morris suffered severe injuries, including, but not limited to, the loss of one eye, pain, suffering and permanent scaring and disfigurement.  Leisl Morris suffered months of mental anguish, loss of society, comfort, care, protection, marital relations, affection and companionship from her husband while Morris' injuries healed.  As a result of the attack and consequent death of Speer, Tabitha Speer suffered the loss of financial support, mental anguish, loss of society, comfort, care, protection, marital relations, affection and companionship of her husband, Speer.  Further, Speer's minor children, T.S. and T.S., suffered the loss of financial support, mental anguish, loss of society, comfort, care, protection, affection, companionship and relationship with their father.

The Court's jurisdiction over Khadr is grounded in the Antiterrorism Act of 1991, 18 U.S.C. § 2333 *et seq*. ("ATA").

This action was initiated in the United States District Court for the District of Utah on May 23, 2014.  Plaintiffs personally served Khadr with a summons and copy of the Complaint on June 19, 2014, at the Bowden Institution located in Innishail, Alberta Canada.  Service was made through the Alberta Office of Justice and the Solicitor General in compliance with the Hague Convention.  On July 23, 2014, Plaintiffs filed a Proof of Service with the Court.  Despite stipulating to extensions to answer the Complaint with Khadr's attorney in Canada and local counsel, Khadr did not file an Answer.  The Clerk of the U.S. District Court for the District of Utah entered a Rule 55(a) Default against Khadr.  This matter now comes before this Court upon Plaintiffs' motion for entry of judgment by default against Defendant Khadr.

## STANDARD OF LAW

A default judgment establishes a defendant's liability.  *Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217 (S.D.N.Y. 2003)("[T]he failure of the al Qaeda defendants to appear concludes the liability phase as against them and only a determination of damages remains."); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65-66 (2nd Cir. 1981); *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2nd Cir. 1995); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) (When a default is entered, a Court must consider all of the plaintiff's allegations of fact as true and his or her claims are established as a matter of law); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("The default conclusively establishes the liability of [the party against whom the judgment was entered.]"); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

4

established.") (Internal quotation marks omitted).  Defendant in this case failed to appear or to answer plaintiffs' complaint.  Therefore, default judgment is proper and the Court is required to affix damages.

Pursuant to FED. R. CIV. P. 55, in order to enable the Court to enter judgment or to carry it into effect, it is necessary to determine the amount of damages.  The Court may conduct such hearings or order such references as it deems necessary and proper.  In support of their Motion, Plaintiffs hereby submit to the Court fact affidavits to establish damages, because affidavits may be used to establish damages.  *See Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217, 224 (S.D. N.Y. 2003) (Affidavits may be used in hearings pursuant to Foreign Sovereign Immunities Act's ("FSIA") default judgment provision); *see also Hutira v. Islamic Republic of Iran*, 211 F.Supp.2d 115, 124 (D.D.C. 202); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2ⁿᵈ Cir. 1994) (upholding the Court's use of and conclusions based on affidavits).

Plaintiffs brought their claims pursuant to the ATA.  The ATA provides,

Any national of the United States injured in his or her person, property, or business, by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  Section 2333(a) allows for "recovery of both pecuniary damages and also for non-economic damages, including loss of companionship, society, and mental anguish experienced by the victim's surviving family members…."  *Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority*, 325 F.Supp.2d 15, 66 (D.R.I. 2004).

This Court has previously decided claims under the ATA.  *See e.g., Morris v. Khadr*, 415 F.Supp.2d 1323 (D. Utah 2006) (hereinafter the "Ahmad Khadr Case"), a copy of which is

attached hereto as Exhibit "A."   Other courts have also decided cases under the ATA.   *See e.g., Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217 (S.D.N.Y. 2003).

## ARGUMENT

POINT 1

LAYNE MORRIS AND LEISL MORRIS ARE ENTITLED
TO DAMAGES IN THE AMOUNT OF $5,200,000

Morris was permanently injured during the attack when flying shrapnel entered his head, permanently damaging his right eye and the right side of his face.   *See* Affidavit of Layne Morris, previously filed in the Ahmad Khadr Case, and attached hereto as Exhibit "B." This Court may take judicial notice of its files as articulated in *Tal v. Hogan*, 453 F.3 1244, n.24 (10th Cir. 2006), specifically of the Ahmad Khadr case.   *See* Exh. "A." Morris suffered extraordinary physical, mental and emotional pain during the time he was treated at Bagram, Afghanistan, at Ramstein Air Base in Germany, and University Hospital in Hamburg, Germany.   *Id.* at ¶¶ 47-48. Morris' life has been irreparably and permanently altered by the injuries he suffered during the terrorist attack.   *Id.* at ¶¶ 49-55.   The devastating impact of these injuries on Morris and his wife are expressly described in his attached affidavit.   *See* Exhibit B.

Morris supplemented his income with an additional $8,000 per year from military reserve service at the time of his injury. *See* Exh. "B" Morris Aff. at ¶ 53.   Due to his injuries, Morris was discharged from the National Guard.   Assuming Morris had the option of working in the National Guard until age 65, a reasonable assumption supported by his Affidavit and consistent with logic, he would have earned $200,000 ($8,000/year x 25 years).   This is a very conservative

number as it does not contemplate raises, cost of living increases or even interest earned on the money.

A reasonable award for pain and suffering experienced by Morris is $2.7 million.  This Court previously awarded $2.7 million in the Ahmad Khadr Case for the lost income and pain and suffering caused by Khadr's father. *See* Exh. "A" *Morris v. Khadr*, 415 F. Supp. 2d at 1339. In the Ahmad Khadr Case, Morris was awarded $2.7 million in damages against Ahamd Khadr for participating in and helping al Qaeda attack Morris by, among other things, recruiting his son, Omar Khadr, to join al Qaeda.

There is a body of Federal Common Law, which includes the Ahmad Khadr Case, which allows for the recovery of pain and suffering under the ATA.  See Exh. "A."  *See also e.g., Lelchook v. Commerzbank*, AG, 2011 WL 4087448,, at *2 (S.D.N.Yl. 2011) (Courts have recognized that § 2333(a) does not require elaboration of the nature of claims that this group of entities may bring, beyond an allegation of injury to a United States national's "person, business or property ... by reason of an act of international terrorism.") In *Knox v. Palestine Liberation Organization,* 442 F.Supp.2d 62, 77 (S.D.N.Y.2006), the court noted that "[s]ection 2333(a) is unclear as to the nature of damages that may be recovered by a covered plaintiff." *Knox* further recognized that in light of the statutory ambiguity, § 2333(a) is best interpreted in light of its animating purpose, "to subject terrorists to the broadest range of economic damages." *Id.* This Court and others reached the same conclusion. *See Morris v. Khadr,* 415 F.Supp. [at 1323], *Linde v. Arab Bank. PLC* 384 F.Supp.2d 571, 589 (E.D.N.Y.2005); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F.Supp.2d 232, 267 (D.R.I.2004).

Further, in the portion of a panel decision left untouched in *en banc* review, the Seventh Circuit observed that Congress meant to incorporate the full range of traditional tort principles into the ATA. *Boim v. Quaranic Literacy Inst. and Holy Land Found. for Relief and Dev.,* 291 F.3d 1000, 1010 (7th Cir.2002), *aff'd in part and rev'd in part,* 549 F.3d 685 (7th Cir.2008) (en banc). As noted in *Knox,* permitting Plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress's intention to incorporate traditional tort-law principles into the statute."

This Court may rely upon the established body of federal common law in determining $2.7 million is an appropriate amount for Morris' lost income and pain and suffering caused or aided and abetted by Omar Khadr.

A $2.7 million award against Omar Khadr is also consistent with the awards rendered to plaintiffs Smith and Soulas in *Smith,* 262 F.Supp.2d 217.  In *Smith,* Smith's estate was awarded $1 million even though he may have died instantly.  *Id*. at 236. Soulas' estate was awarded $2.5 million with evidence indicating he may have lived up to one hour, at most. *Id*. at 239. Awarding Morris $2.7 million is conservative given he will have to endure a lifetime of pain and suffering.

The ATA provides recovery for "[a]ny national of the United States injured in his or her person."  18 U.S.C. § 2333(a).  Morris' wife, Leisl Morris is a national of the United States.  As such, Leisl Morris is entitled to recover noneconomic damages in the form of mental anguish, loss of consortium, marital services, affection and companionship under the ATA.   In the Complaint, Plaintiff Leisl Morris asked for $2.5 million in damages for the losses she incurred due to Morris' injuries. *See* ECF Doc. 7.  This Court should award Leisl the requested $2.5 million because under a similar statutory regime, the Foreign Sovereign Immunities Act (FISA),

spouses were awarded damages of $10 million for loss of companionship when their husbands were taken hostage but returned alive because of the mental anguish the women suffered which may have "exceeded the grief normally experienced as the result of the death of a loved one." *See Cicippio v. Islamic Republic of Iran,* 18 F. Supp.2d 62, 70 (D.D.C 1998).  In instances where spouses have died, courts, have awarded surviving spouses $8 million and $12.5 million for the emotional injuries they sustained resulting from the loss of their husbands.  *See i.e., Heiser v Islamic Republic of Iran*, 466 F. Supp.2d 229 (D.D.C. 2006); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570 (S.D.N.Y. 2012) and Ahmad Khadr Case, Exh. "A."    Leisl Morris seeks a lesser amount than the Plaintiff spouses in *Cicippio* in recognition of the fact that Morris was not held hostage for a period of years and was not abused; and less than the solatium claims awarded where spouses have died because at least the Morris family still has Morris. Pursuant to 18 U.S.C. § 2333(a), this amount should be trebled.

POINT 2

TABITHA SPEER AND CHILDREN ARE ENTITLED
TO DAMAGES IN THE AMOUNT OF $39,500,000

The surviving members of Speer's estate should be awarded $39.5 million, prior to the trebling of damages under 18 U.S.C. § 2333(a).  In justification for this amount, Plaintiffs will track the elements of damage awarded in the Ahmad Khadr Case.

The first element of damage to be considered is pain and suffering endured by Christopher in the ten days prior to his death.  While this is a difficult calculation given Christopher's inability to communicate during this time-frame, there is precedent for determining its value. This Court previously found it appropriate to award $10 million for Christopher's pain and suffering endured before his death in the Ahmad Khadr Case. *See* Exh. "A."

In addition, in *Smith,* the Court awarded $1 million for Smith's pain and suffering, despite an absence of evidence that he survived the initial attack. *Smith*, 262 F.Supp. 2d at 234. The *Smith* Court also awarded $2.5 million plaintiff Soulas' estate for pain and suffering where Soulas survived less than one hour. *Id*. By contrast, one can only imagine the private hell Christopher endured battling for his life for ten days post-attack. Given the precedent set by this Court in the Ahmad Khadr case, and the direction supplied by the *Smith* Court, $10 million is a conservative request.

The second element of damage to consider is non-economic damages suffered by Christopher's wife and children. Christopher's wife and children are entitled to recover damages for loss of companionship, society, guidance and mental anguish. This is well-established by both the ATA and case law.

In the Ahmad Khadr Case this Court awarded $20 million for the noneconomic damages suffered by Speer's wife and children. This Court justified a $20 million damages award "for [the Speer family's] loss of companionship, society, guidance and mental anguish" *See* Exh. "A", *Morris v. Khadr*, 415 F. Supp. 2d at 1337. This Court's decision was based largely on Tabitha Speer's affidavit testimony of the close relationship she and her children enjoyed with Speer, a copy of which is attached hereto as Exhibit "C." For example, Tabitha Speer stated, Christopher… spent every non-working minute with our children… He wanted them to know he loved them more than anything." *See* Exh. "C," affidavit of Tabitha Speer at ¶15. With Christopher's death, Tabitha stated "I did not know how I would raise our family alone. I had lost my eternal companion and was lost myself." *Id*. at ¶23. Given the close family relationship

enjoyed between Speer, his wife and two children, an analogous damage award would be appropriate.

Second, this Court considered the attempted communication between Speer and Tabitha Speer during the waning moments of his life.  Tabitha Speer's statements regarding the last moments together with her husband demonstrate such communication, "I remained by Christopher's side day by day rubbing his feet, kissing his cheeks and talking to him…  At times, it appeared Christopher was puckering his lips to kiss me.  I know Christopher knew I was there by his side.  He knew I needed to see him one last time before he left this earth…"  *Id.* at ¶ 21. In analyzing the end of Christopher's life, one must consider Tabitha spent every day of her husband's last week watching him suffer.  She was forced to see that "[t]he grenade had exploded sending shrapnel into his temple through the front of his skull, ricocheting off the rear of his skull and lodging in his brain." *Id.* at ¶20.  As a result, Tabitha testifies, "[a]fter ten agonizing days, Christopher died on August 6, 2002.  This was the day my world collapsed.  Part of me died with him." *Id.* at ¶ 22.

A reasonable award for Mrs. Speer, and the Speer children, for loss of companionship, society, guidance and mental anguish would be $12.5 million to Tabitha Speer and $8.5 million each to Christopher's children. This amount is consistent with this Court's award of damages to the Speer family in the Ahmad Khadr Case and with the solatium awards set forth in *In re Terrorist Attacks on Sept. 11, 2001*, where the court determined that awards of $12.5 million to spouses of victims of terrorism, and $8.5 to each child, were appropriate. No. 03 MDL 1570 GBD FM, 2012 WL 4711407, at *2 (S.D.N.Y. Oct. 3, 2012).

It is appropriate, in light of this analysis, to award Mrs. Speer, and the Speer children total damages in the amount of $39.5 million, before being trebled under 18 U.S.C. § 2333(a).

POINT THREE

THIS COURT SHOULD AWARD ATTORNEY FEES AND
COSTS AS PROVIDED FOR UNDER 18 U.S.C. § 2333(a)

This Court should award Plaintiffs' the actual attorney fees and costs incurred in bringing this action pursuant to 18 U.S.C. § 2333 (a), which provides, "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains *and the cost of the suit, including attorney's fees*." (Emphasis added).

Attorney fees and costs incurred in bringing this suit to date are $52,664.21, as indicated in the Affidavit of Attorney Fees attached hereto as Exhibit "D." Consistent with the provisions of 18 U.S.C. § 2333(a) and the attached Affidavit of Attorney Fees, Plaintiffs hereby request this Court enter an award of attorney fees and costs in the amount of $52,664.21.

## CONCLUSION

Based upon the foregoing, it is appropriate for the Court to enter default judgment against defendant and to award damages in the amount of $5.2 million to Morris and family, and damages in the amount of $39.5 million to the Tabitha Speer and family. In addition, pursuant to 18 U.S.C. § 2333(a), the damages must be trebled. Thus, the total award should be $134.1 million.

For the foregoing reasons, plaintiffs respectfully request this Court to enter default judgment against Defendant in an amount the Court deems just based on the foregoing memorandum and affidavits of Layne Morris and Tabitha Speer, to treble all damages pursuant to 18 U.S.C. § 2333 and impose judgment in an amount not less than $134.1 million, and award attorney fees and costs in the amount of $52,664.21 pursuant to 18 U.S.C. § 2333 (a).

Dated this 24th day of April, 2015.

WINDER & COUNSEL, P.C.


    /s/  Laura Tanner
Donald J. Winder
Laura H. Tanner
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of April, 2015, I caused to be served a true and correct copy of the foregoing MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' DEFAULT JUDGMENT AND ATTORNEY FEES AND COSTS to the following by the method indicated below:

Omar Khadr                                    (X) U.S. Mail, Postage Prepaid
c/o The Bowden Institution           (  ) Hand Delivered
P.O. Box 6000                               (  ) Overnight Mail
Innisfail, Alberta                            (  ) Facsimile
T4G 1V1                                        (  ) Electronic Filing System
CANADA

Dennis Edney, P.C.                        (X) U.S. Mail, Postage Prepaid
234 Wolf Ridge Close                   (  ) Hand Delivered
Edmonton, Alberta                        (  ) Overnight Mail
T5T 5M6                                       (  ) Facsimile
CANADA                                       (  ) Electronic Filing System


 /s/ Laura H. Tanner

14